FILED
OCT 17 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MEAGAN CAREY, ) | JUDGE LINDBERG |
| Plaintiff, ) | |
| ) | JURY DEMAND |
| v. ) | |
| ) | No. 05C 5961 |
| THE 900 NORTH MICHIGAN ) | |
| SURGICAL CENTER, LLC and ) | |
| MAGNA HEALTH SYSTEMS, LLC, ) | MAGISTRATE JUDGE VALDEZ |
| Defendants. ) | |

## COMPLAINT AT LAW

Now comes Plaintiff Meagan Carey, by Thomas G. Gardiner and Colette A. Matusinec, her attorneys, with Gardiner Koch & Weisberg, as and for her Complaint against Defendant The 900 North Michigan Surgical Center, LLC and Magna Health Systems, LLC states:

### JURISDICTION AND VENUE

1. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq., as amended (hereinafter "Title VII").

2. Jurisdiction is conferred on this Court by the above-named statutes, and 28 U.S.C. § 1331 Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § § 1391 (b) and (c).

### PARTIES

3. Meagan Carey ("Carey") is a female and a citizen and resident of the United States and of New York, New York. At all relevant times herein Carey was employed by the Defendants, The 900 North Michigan Surgical Center and Magna Health Systems.

4. Defendant, The 900 North Michigan Surgical Center ("900 North"), is a limited liability corporation, with its principal place of business located at 15 W. Grand Avenue, Chicago, Cook County, Illinois.

5. Defendant, Magna Health Systems, LLC ("Magna"), is a limited liability corporation, with its principal place of business located at 15 W. Grand Avenue, Chicago, Cook County, Illinois.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Carey has fulfilled all conditions precedent to the institution of this action. On January 7, 2005, Carey filed a timely Charge of Discrimination with the Illinois Department of Human Rights and The United States Equal Employment Opportunity Commission (hereinafter "EEOC"). On July 19, 2005 the EEOC issued a Notice of Right to Sue.

## COUNT I - TITLE VII GENDER DISCRIMINATION & SEXUAL HARASSMENT AGAINST DEFENDANTS 900 NORTH AND MAGNA

7. Carey began working as a Program Coordinator for Defendants on or about June 15, 2003.

8. Throughout her employment with Defendants, Carey was subjected to gender discrimination, in violation of Title VII, including, but not limited to, sexual harassment.

9. On or about December 13, 2003, Carey entered into a sexual relationship with her supervisor, Dr. Santiago Horgan ("Horgan").

10. Prior to and throughout the relationship Horgan told Carey that she should move into a more expensive apartment closer to the offices located at 900 N. Michigan Avenue and that he would contribute to paying her rent.

11. Horgan requested Carey to move so that they could easily maintain a sexual

relationship.

12. Carey ended the relationship with Horgan on February 10, 2004.

13. Since, February 10, 2004, Carey has been subjected to severe and pervasive sexual harassment on a near-daily basis by male co-workers, including Horgan and Dr. Moser ("Moser"). The sexual harassment has included, but has not been limited to, the following:

A. In Carey's presence, Horgan has told an intern, Moser, to kiss and/or have sex with Carey and that Moser should "try her out";

B. Horgan has stated that while he could not discuss sex with Carey from 9 a.m. until 5:00 p.m., he could speak to Carey in any manner he saw fit after 5:00 p.m., including the discussion of sex;

C. On or about March 17, 2005, Dr. Horgan, in front of Moser and another co-worker named "Debby", Horgan commented on Carey's hair stating that the part in Carey's hair is where Carey's boyfriend would "rest his balls" (testicles);

D. On or about March, 2004, Horgan announced that the office would play the game "truth or dare" and then "dared" Moser to kiss Carey;

E. On more than one occasion, Horgan subjected Carey to stories and/or inquiries of a sexual nature;

F. On or about April 26, 2004, Moser commented that Carey's outfit excited him. Moser then proceeded to unzip his pants and expose his genitalia to Carey;

G. Horgan, on more than one occasion, hired female escorts from his computer at work;

H. On or about April 28, 2004, Moser hit Carey's buttocks as Carey was retrieving

3

    documents from a printer. Moser stated he would miss Carey when he was gone and placed his hand on Carey's buttocks again as she exited the room;

I. After Carey helped a patient, Horgan asked the patient "is it Meagan Carey MD or NB for 'no brain'?";

J. Hogan and Moser constantly asked personal sexual questions of Carey such as her prior sexual history with other males;

K. Horgan has repeatedly stated that the owner, Dr. Bozorgi ("Bozorgi"), intended to fire Carey. When asked by Carey if this were true, Dr. Bozorgi has stated that Horgan's statements were untrue;

L. Horgan has thrown files at Carey, as well as pens, staplers, and three-hole punches;

M. On more than one occasion Horgan has asked if Carey was uncomfortable working with him. When Carey replied in the affirmative, Horgan has stated that he doesn't care;

N. Horgan stated that he could speak to Carey in any manner, including a sexual manner, if it was after 5 p.m. When Carey complained to Dr. Bozorgi, Dr. Bozorgi laughed and told Carey what Hogan said was true.

O. Throughout her employment with Defendants, Carey has been called several offensive and belittling names, including bimbo;

15. Carey did not participate in this harassment and clearly communicated to the harassers that she found such actions offensive.

16. Carey formally complained of Moser's acts of sexual harassment and unwanted

4

sexual advances to her supervisor, Dr. Bozorgi, on April 29, 2004.

17. Defendants 900 North and Magna refused to take any measures to stop the harassment, stating Moser was not their employee and that it was the University of Illinois's responsibility to conduct an investigation into the matter..

18. Subsequent to Carey's formal complaint of April 29, 2004, Horgan's hostile behavior toward Carey worsened. Horgan continued to berate Carey on a near daily basis and continued to throw files at Carey when he became upset.

19. Horgan's abusive behavior towards Carey was common knowledge amongst their co-workers and within the office. Horgan's actions were frequent and public, occurring within the purview of fellow employees.

20. Carey was subjected to this harassment because of her sex (female). This harassment was both subjectively and objectively offensive and was severe and pervasive so as to create a sexually hostile work environment.

21. Magna and 900 North intentionally discriminated against Carey in violation of Title VII when its employees engaged in gender discrimination, including but not limited to, hostile environment sexual harassment.

22. Additionally, Magna and 900 North intentionally discriminated against Carey in violation of Title VII when it failed to take reasonable corrective action against the harassers once it knew of the gender discrimination and sexual harassment.

23. Magna and 900 North engaged in the aforesaid discriminatory acts with malice or with reckless indifference to Carey's federally protected rights under Title VII.

**WHEREFORE**, Carey requests that this Court:

5

1. Enter a finding that she was subjected to gender discrimination in violation of Title VII;

2. Enter a finding that she was subjected to a sexually hostile work environment in violation of Title VII;

3. Enter a finding that 900 North and Magna failed to take prompt and appropriate corrective action to stop the gender discrimination and sexual harassment and, indeed, acquiesced and participated in it with malice and reckless indifference for Carey's rights under Title VII;

4. Award Carey compensatory damages in an amount to be proven at trial;

5. Award Carey reasonable attorneys' fees and costs incurred in bringing this action;

6. Award any further relief this Court deems to be just and appropriate.

## COUNT II - TITLE VII RETALIATION AGAINST DEFENDANTS MAGNA AND 900 NORTH

24. Carey realleges and reincorporates paragraphs 1-23 as though fully alleged herein.

25. On May 20, 2004, Carey met with Susan Bozorgi, Defendants' Quality Assurance Director, Risk Management. Susan Bozorgi requested Carey sign a document stating that Horgan's conduct and conduct were "appropriate and respectful". Carey refused to sign the document, reiterating her concerns and objections as to Horgan's workplace behavior as well as Defendants' failure to respond to her complaint against Moser.

26. On May 21, 2004, Carey was told that she must sign the letter, referenced in paragraph 25. Carey again refused to sign the document as it was untruthful and incorrect.

27. Immediately thereafter, Carey was transferred to another position at another

location of Defendants'. Defendants' employee Elizabeth Szmray, who drove Carey to her new location, cited Carey's refusal to sign the untruthful statement as the reason for her "transfer".

28. Prior to Carey's transfer, Carey met and exceeded all of 900 North Surgical Center and Magna Health Systems expectations of her.

29. Prior to Carey's "transfer", her position was that of a receptionist whose position consisted of answering phones, maintaining a high level of client interaction, organizing files, among other administrative duties.

30. Carey's new position was located at the Defendants' 15 E. Grand location. Prior to Carey's arrival, upon information and belief, this location had never employed a receptionist and used an automated answering system.

31. Upon information and belief, upon Carey's arrival, this automated answering system was turned off and replaced by Carey for her brief stay at this location.

32. Carey's new "work area" was devoid of any office materials such as a computer, writing supplies, paper, stapler, or other necessary office supplies. She was never assigned a supervisor or given any tasks to complete.

33. Her desk was completely isolated from any co-workers. Furthermore, her new position was devoid of any client interaction, as there were none at this location.

34. Upon arrival, one of Carey's new co-workers informed Carey that everyone at that location was told not to speak to Carey.

35. During this same conversation, Carey was also informed by her new colleague not to trust anyone in the office as her co-workers were instructed to watch her.

36. As a "receptionist" at the 15 E. Grand location, Carey was paid substantially less

than that which she was paid for her previous position as a receptionist at the 900 North Michigan location.

37. Within three months of Carey's transfer, she was informed that her new position had been eliminated and that the automated answering system, which was in place prior to her arrival, would be used in her stead.

38. Upon information and belief, Carey's new "position" did not exist prior to May 21, 2004 or subsequent to her termination on August 2, 2004.

39. Upon information and belief, Carey's "position" at the 15 E. Grand location was created solely for the purpose of avoiding liability and disguising the impropriety of Carey's removal from her previous position.

40. Subsequent to her position at the 15 E. Grand location being eliminated, Carey was terminated from her employment with Defendants on August 2, 2004. She was offered no other position with Defendants.

41. Carey was given no reason for her termination, other than her position at 15 E. Grand being eliminated. Furthermore, she was informed that she would receive no severance unless she signed a statement agreeing not to sue Defendants. Carey refused to sign the statement and received no severance.

42. Upon information and belief, Carey was transferred and terminated solely because of complaints of sexual harassment against Horgan and Moser.

WHEREFORE, Carey requests that this Court:

31. Enter a finding that she was subjected to retaliation in violation of Title VII;

32. Award Carey compensatory damages in an amount to be proven at trial;

33. Award Carey her reasonable attorneys' fees and costs incurred in bringing this action; and

34. Award any further relief this Court deems to be just and appropriate.

MEAGAN CAREY

By: _____

One of Her Attorneys

Thomas G. Gardiner ARDC # 6180243
Colette A. Matusinec ARDC # 9276654
Gardiner Koch & Weisberg
53 W. Jackson Blvd. Suite 950
Chicago, IL 60604
312-362-0000
312-362-0440 (fax)